IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH CLIFFORD MALCOMB,<br>    Plaintiff,<br><br>v.<br><br>RACHEL DIETZ, Ambridge Police Office;<br>CHIEF OF POLICE ROMUTIS, Ambridge<br>Police Chief; MARTIN V. SCHULTY,<br>Magistrate Judge; JANET DOLAN, Director<br>of Pen [sic] Dot; and JOHN DOHANICH,<br>Common Pleas Judge,<br><br>    Defendants. | Civil Action No. 11 - 212<br><br>Magistrate Judge Cynthia Reed Eddy |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed by Defendants John Dohanich and Martin V. Schulte (incorrectly misspelled as "Schulty" in the Complaint) (ECF No. 14) be granted. It is further recommended that the Complaint be dismissed with prejudice against the remaining Defendants under 28 U.S.C. § 1915A.

**II.    REPORT**

Plaintiff, Joseph Clifford Malcomb, an inmate currently confined at the State Correctional Institution at Greensburg, Pennsylvania, commenced this action under 42 U.S.C. § 1983 and 42 U.S.C. 1985(3) alleging violations of his constitutional and state rights against the following Defendants: Rachel Dietz, Ambridge Police Office; Chief of Police Romutis, Ambridge Police Chief; Martin V. Sculte, Magistrate Judge; Janet Dolan, Director of the Commonwealth of Pennsylvania Department of Transportation (PennDOT); and John Dohanich, Common Pleas Judge. All of the Defendants are sued in their individual and official capacities.

A. <u>Standard of Review</u>

Presently pending is the motion to dismiss filed by Defendants Dohanich and Schulte (ECF No. 14). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v.Twombly</u>, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) (citing <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555. *See also* <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state

a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the new authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b). In applying this statutory requirement, a federal court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Dodrill, 696 F.Supp.2d 454, 471 (M.D. Pa. 2010).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Relevant Allegations and Facts of Record

On December 6, 2007, Plaintiff was arrested and detained in the Beaver County Jail (BCJ) for state parole violations. On December 10, 2007, Plaintiff was transferred from the BCJ to the State Correctional Institution at Pittsburgh (SCIP) to serve nine months backtime for technical parole violations. Also on December 10, 2007, Traffic Citation No. B50646326 was issued against Plaintiff by the Ambridge Borough Police Department charging him with the failure to stop at a red light in violation of the Pennsylvania Code. The docket sheets lists the arresting office as Rachel Elizabeth Dietz (ECF No. 15-1, p. 2).

Sometime thereafter, Plaintiff received an Official Notice of Suspension of Driving Privilege (referred to as a DL-38) from Judge Schulte informing him that his driving privileges would be suspended effective September 9, 2008 due to his failure to have responded to his citation by

4

submitting payment due of $107.50 (ECF No. 17-3, p. 13). On May 27, 2008, Plaintiff responded to this notice by letter in which he stated that he was incarcerated during the time that he was alleged to have run the red light and that his whereabouts could be confirmed through records from the BCJ and SCIP (ECF No. 17-3, p. 11).

Another DL-38 was sent to Plaintiff in August of 2008. On August 20, 2008, Plaintiff wrote another letter in response again explaining that he was in jail during the relevant time period (ECF No. 17-3, p. 14).[1] On September 5, 2008, the Magisterial District Court 36-1-01 wrote to Plaintiff informing him that it needed his probation officer to send it a letter stating that Plaintiff had been in jail during the relevant time period (ECF No. 17-6, p. 1). On September 11, 2008, the District Court sent Plaintiff a Notice of Trial informing him that his hearing was scheduled for October 7, 2008 at 10:45 (ECF No. 17-5, p. 1). After Plaintiff failed to appear, he was found guilty of the summary offense (ECF No. 17-7, p. 1). On October 14, 2008, PennDOT issued a letter to Plaintiff informing him that his driving privileges had been suspended.

Plaintiff filed a timely appeal to the Court of Common Pleas. Subsequently, Judge Dohanich granted Plaintiff's Petition to proceed *in forma pauperis* but denied his Motion for Appointment of Counsel and Request for a Transport Order (ECF No. 17-7, p. 9). On March 31, 2009, the traffic citation charge was withdrawn (ECF No. 15-2, p. 4).

---

1. Also on that date, Plaintiff sent a similar letter to PennDOT requesting that his license not be suspended (ECF No. 17-3, p. 15). On August 27, 2008, Janet L. Dolan, the Director of Driver Licensing at PennDOT wrote to Plaintiff that it required appropriate documentation from the Court that he was found not guilty of the violation (ECF no. 17-4, p. 1).

Plaintiff asserts that, due to actions of Defendants, he has had to endure negligence, denial of due process, official liability, discrimination, malicious prosecution, and the intentional infliction of emotional distress. He seeks compensatory and punitive damages.

C. Judicial Defendants' Motion to Dismiss

In this action, Plaintiff is seeking to impose liability against the Honorable John Dohanich, Judge of the Court of Common Pleas of Beaver County, Pennsylvania and the Honorable Martin V. Schulte, District Magistrate Judge (the Judicial Defendants). The Judicial Defendants move to dismiss Plaintiff's Complaint because Plaintiff's claims against them in their individual capacity are barred by absolute judicial immunity and Plaintiff's claims against them in their official capacity are barred by the Eleventh Amendment. This Court agrees.

In this regard, in a limited number of circumstances, government officials are entitled to absolute immunity from a suit for damages. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). The grant of absolute immunity from suit has been used "quite sparing," and is confined to official functions in which the exposure to liability would invariably impede the official in the performance of his or her duties. Forrester v. White, 484 U.S. 219, 223-24 (1988).

Judges generally are accorded absolute immunity from the award of money damages for the performance of "truly judicial acts" that are performed within their lawful jurisdiction. Mireles v. Waco, 502 U.S. 9 (1991); Forrester v. White, 484 U.S. 219, 223-24 (1988). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, Mireles, 502 U.S. at 11-12, or are taken as a result of a conspiracy with others. Dennis v. Sparks, 449 U.S. 24, 27 (1980). "Although unfairness and injustice to a litigant may result on

occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " Mireles, 502 U.S. at 9 (quotation omitted).

It is only when a judge has acted in the "clear absence of all jurisdiction" will he be deprived of his absolute immunity. Stump v. Sparkman, 435 U.S. 349, 356 (1978). However, judicial acts taken "in excess" of a judge's subject matter jurisdiction are protected by judicial immunity, even when they are alleged to have been done maliciously or corruptly. Stump, 435 U.S. at 356, n.7 (citing Bradley v. Fisher, 80 U.S. 335, 351-52 (1871)). In Stump, the Supreme Court explained the distinction between lack of subject matter jurisdiction and excess of jurisdiction as follows. A probate judge, having jurisdiction over only wills and estates, would be acting in the clear absence of his jurisdiction should he try a criminal case and, as a result, he would not be immune from liability for his actions. *Id*. However, a criminal court judge that uses his judicial authority to convict a defendant of a nonexistent crime is merely acting "in excess" of his jurisdiction and, therefore, would be immune. *Id*.

Here, all of the allegations against the Judicial Defendants concern actions that were taken within their judicial authority. Thus, the Judicial Defendants are entitled to absolute immunity from individual liability in this action. *Accord* Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, the doctrine of absolute judicial immunity precludes conspiracy-based claims as well. *See, e.g.*, Ashelman v. Pope, 793 F. 2d 1072, 1077-1078 (9th Cir. 1986); Dykes v. Hosemann, 776 F.2d 942 (11th Cir. 1985); In Holloway v. Walker, 765 F.2d 517,

522-523 (5th Cir.), *cert. den*. 474 U.S. 1037 (1985). Consequently, Plaintiff's claims against the Judicial Defendants in their individual capacities must be dismissed.

Plaintiff also seeks to assert liability against the Judicial Defendants in their official capacity. A suit against a state government official in his official capacity is really a suit against the state. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). By contrast, officers sued in their personal capacity come to court as individuals. Hafer v. Melo, 502 U.S. 21, 26. Judge Dohanich is a Judge in the Court of Common Pleas of Beaver County, which is an entity of the Commonwealth of Pennsylvania pursuant to 42 Pa. Cons. Stat. § 301(4). Judge Martin V. Schulte is a retired judicial officer of Pennsylvania Magisterial District Court 36-1-01, which is an entity of the Commonwealth of Pennsylvania pursuant to 42 Pa. Cons. Stat. § 30y1(9).[2] Thus, suing the Judicial Defendants in their official capacity is considered a suit against the Commonwealth of Pennsylvania. *See* Callahan v. City of Philadelphia, 207 F.3d 668 (3d Cir. 2000).

Plaintiff's claims against the Judicial Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution. In this regard, the withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state, *see* Regents of the University of California v. Doe, 519 U.S. 425 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978), and applies to suits brought by citizens of the

---

2. *Accord* Goodson v. Maggi, Civil Action No. 08-44, 2009 WL 2960386, 6 (W.D. Pa. Sept. 14, 2009) (citing Callahan v. City of Philadelphia, 207 F.3d 668, 673 (3d Cir.2000) (holding trial courts within the First Judicial District are state entities and thus are not "persons" within Section 1983).

defendant state as well. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984).

Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g.*, Pennsylvania v. Union Gas Co., 491 U.S. 1, 15 (1989) (Commerce Clause, which allows Congress to restrict interstate trade activity); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Atascadero, 473 U.S. at 246.

The Commonwealth of Pennsylvania has not waived its grant of sovereign immunity under the Eleventh Amendment. In fact, the Commonwealth specifically has reserved its immunity against federal suits in 42 Pa. Cons. Stat. § 8521(b), which provides that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." None of the exceptions to sovereign immunity contained in 42 Pa. Cons. Stat. § 8522 are applicable to the Plaintiff's allegations. Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See, e.g.*, Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a

federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Consequently, Plaintiff's Complaint must be dismissed against the Judicial Defendants in their official capacity as well. *Accord* Benn v. First Judicial District, 426 F. 3d 233, 239-40 (3d Cir. 2005) (holding that the Philadelphia Court of Common Pleas was entitled to Eleventh Amendment immunity); Chilcott v. Erie County Domestic Relations, 283 Fed. App'x 8, 10 (3d Cir. 2008).

D. Remaining Defendants

It does not appear from the Docket that the remaining Defendants have been served. Notwithstanding, the discussion below reveals that Plaintiff's allegations fail to state a claim upon which relief may be granted and that allowing Plaintiff the opportunity to amend his Complaint would be futile.

**1.      Limitations Periods**

Plaintiff seeks recovery against Defendants under 42 U.S.C. § 1983 and 1985. These statutes do not contain a specific federal statute of limitations period for filing civil rights actions thereunder. Instead, the limitations period for civil actions brought under these statutes is determined by state law. Such actions are classified as personal injury claims for the purpose of determining the limitations period under the applicable state law. Wilson v. Garcia, 471 U.S. 261, 272-76 (1985). The limitations period for personal injury actions under Pennsylvania law is two years. 42 Pa. Cons. Stat. Ann. § 5524. Thus, under Pennsylvania law, the applicable limitations period for civil rights actions asserted under 42 U.S.C. §§ 1983 and 1985 is two years.

In Pennsylvania, the limitations period begins to run from the time the plaintiff suffers the injury or has reason to know of the injury. Morgan v. Johns-Manville Corp., 354 Pa. Super. 58, 61-62, 511 A.2d 184, 186, *allocatur denied*, 514 Pa. 636, 522 A.2d 1105 (1986). Federal law, however, governs the date of accrual for claims brought under § 1983. Gibson v. Superintendent of New Jersey Dept. of Law and Public Safety, 411 F.3d 427, 435 (3d Cir. 2005), *cert. denied*, 547 U.S. 1035 (2006). Under federal law, much like in Pennsylvania, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. Gibson, 411 F.3d at 435 (quoting Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). *See also* Wallace v. Kato, 549 U.S. 384, 390 (2007) ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete cause of action ... that is, when the plaintiff can file suit and obtain relief") (internal quotations and citations omitted).

Plaintiff's Complaint is dated February 15, 2011. The events Plaintiff references in his complaint occurred over two years prior to his filing the complaint in this case. The only action that occurred during the previous two-year period, *i.e.*, between February 15, 2011 and February 15, 2009, is the withdrawal of Plaintiff's traffic citation, which occurred on March 31, 2009 (ECF No. 15-2, p. 4). The only claim Plaintiff makes relevant to this allegation is for malicious prosecution. The statute of limitations on malicious prosecution claims does not begin to run until the underlying criminal proceedings are terminated in plaintiff's favor. Crawford v. Miller, 269 Fed. App'x 178, 180 (3d Cir. 2008) (citing Rose v. Bartle, 871 F.2d 331, 348 (3d Cir. 1989)).

Plaintiff filed this action within two years of the date the citation was withdrawn against him. Thus, his malicious prosecution claim is timely. Notwithstanding, his allegations show that he can not allege the essential fifth element of a malicious prosecution claim.

11

To prove malicious prosecution, a plaintiff must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of a liberty consistent with the concept of seizure as a consequence of a legal proceeding. Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998) (citing Albright v. Oliver, 510 U.S. 266 (1994) (holding that while substantive due process would not provide a basis for relief, the Fourth Amendment might).

Here, Plaintiff has set forth no allegation that he has suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See* California v. Hodari D., 499 U.S. 621, 625-27 (1991) ("seizure is a show of authority that restrains the liberty of a citizen;" actual physical touching is not required); County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (seizure is "government termination of freedom of movement intentionally applied"). He was incarcerated due to his technical parole violations, not the traffic citation. Plaintiff does not identify any pretrial restraints on his liberty or for that matter, any restrictions-onerous or otherwise-that were imposed upon him due to the citation. Indeed, he does not plead that he was arrested, detained, or handcuffed; that he was restricted from traveling; or that he had to post any kind of bail. At best, Plaintiff's license was suspended for a period of time but this alone is insufficient to state a malicious prosecution claim. *See, e.g.*, Holmes v. McGuigan, 184 Fed. Appx. 149, 151 (3d Cir. 2006) (having to defend oneself against a speeding ticket is not a seizure for purposes of § 1983 malicious prosecution claim); Benard v. Washington County, 465 F.Supp.2d 461 (W.D. Pa. 2006) (Fourth Amendment seizure did not occur where plaintiff released on her own recognizance, required to notify court and bail authority if she changed address, and required to

attend court proceedings); Benckini v. Coopersburg Borough, Civil No. 05-5122, 2008 WL 2156713, at *5 (E.D. Pa. May 21, 2008) ("The issuance of a traffic citation and the resulting court appearances simply do not result in a deprivation of liberty sufficient to support a malicious prosecution claim.") Consequently, although Plaintiff's malicious prosecution claim is timely, he can not state a claim upon which relief may be granted. Consequently, the Complaint should be dismissed with prejudice against all Defendants.

## III.     CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendants John Dohanich and Martin V. Schulte (incorrectly misspelled as "Schulty" in the Complaint) (ECF No. 14) be granted It is further recommended that the Complaint be dismissed with prejudice against the remaining Defendants under 28 U.S.C. § 1915A.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will constitute a waiver of any appellate rights. Any party opposing objections may file their response to the objections in accordance with the Local Rules.

November 3, 2011

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     Joseph Clifford Malcomb, BW3347
        SCI-Greensburg
        165 S.C.I. Lane
        Greensburg, PA 15601